## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOSEPH P. THOMAS, JR., WILLIE SEWARD, : 
VICTOR H. PINCKNEY, SR., STEVE YASSKY, :   CIVIL ACTION
JAMES LIPSCHUTZ, ELBERT SMITH, JR., : 
CAROLYN SMITH, and FRANK B. SOLAR, on : 
behalf of themselves and all others similarly : 
situated :
                                           :
           Plaintiffs, :
                                           :
           v. :
                                           :
THE PHILADELPHIA HOUSING AUTHORITY, :   NO. 10-6185
THE PENNSYLVANIA INSTITUTE OF : 
AFFORDABLE HOUSING PROFESSIONALS, : 
PHA-TENANT SUPPORT SERVICES, INC., : 
THE INSTITUTE OF REAL ESTATE : 
MANAGEMENT d/b/a, a/ka, t/a IREM, CARL : 
GREENE, (individually and in his official : 
capacity), DIANE ROSENTHAL, (individually and :
in her official capacity), KIRK DORN, : 
(individually and in his official capacity), ASIA : 
CONEY, (individually and in her official capacity) :
MICHAEL LEITHEAD, (individually and in his : 
official capacity), CAROLYN CARTER, : 
(individually and in her official capacity), LINDA : 
STALEY, (individually and in her official : 
capacity), and JOHN DOE NUMBERS ONE : 
THROUGH TEN (individually and in their official : 
official capacity) : 
                                           :
           Defendants. :

## MEMORANDUM

BUCKWALTER, S.J.                                             June 15, 2011

Defendants Philadelphia Housing Authority, Pennsylvania Institute of Affordable

Housing Professionals, PHA-Tenant Support Services, Inc., Institute of Real Estate Management,

Carl Greene, Diane Rosenthal, Kirk Dorn, Asia Coney, Michael Leithead, Carolyn Carter, and

Linda Staley (collectively "Defendants") have filed the present Motions to Dismiss the Complaint of Plaintiffs Joseph P. Thomas, Jr., Willie Seward, Victor H. Pinckney, Sr., Steve Yassky, James Lipschutz, Elbert Smith, Jr., Carolyn Smith, and Frank B. Solar (collectively "Plaintiffs") pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, these Motions are granted.

## I.    FACTUAL AND PROCEDURAL HISTORY

According to the facts alleged in the Complaint, Defendant Philadelphia Housing Authority ("PHA") administers a Housing Choice Voucher/Section 8 program ("HCV/Section 8 Program"), which provides low-income families with vouchers that can be used to rent privately-owned residences. (Compl. ¶ 1.) Plaintiffs are landlords who participate in the HCV/Section 8 Program. (Id. ¶ 3.) In 2002, Defendant PHA instituted a new rule that required landlords participating in the HCV/Section 8 Program to complete a training course with Defendant Institute of Real Estate Management ("IREM"). (Id. ¶ 1.) Landlords were charged $200 to attend the course. (Id.) Beginning in 2008, these payments were made to Defendant Pennsylvania Institute of Affordable Housing ("PIAHP"), a non-profit organization created by Defendant PHA, whose objective is to lobby for public housing and sponsor activities for nonunion employees of PHA. (Id. ¶¶ 1, 31.)

Because the mandated training course was implemented by Defendant PHA, rather than by any federal regulation, PHA needed to obtain the approval of the Department of Housing and Urban Development ("HUD"). (Id. ¶ 1.) Plaintiffs allege that Defendant PHA never obtained approval to require landlords to take the course, to charge for the course, or to divert the course fees to Defendant PIAHP. (Id. ¶¶ 38-40.)

On November 12, 2010, Plaintiffs filed a Complaint on behalf of themselves and all others similarly situated. In Count One, Plaintiffs seek injunctive and declaratory relief for civil rights violations. (Id. ¶¶ 41-48.) They allege that Defendants unlawfully and improperly collected money from them "under the pretext that the funds would be used to qualify for the Section 8 program, but instead were improperly converted and used for the benefit of defendants[,] used to financially support political activities and used to support lobbying activities . . . ." (Id. ¶ 42.) Plaintiffs claim that these actions violated their rights pursuant to the First, Fifth, and Fourteenth Amendments of the Constitution and 42 U.S.C. § 1983. (Id.)

In Count Two, Plaintiffs seek damages for federal civil rights violations from Defendants PHA, PIAHP, IREM and Tenant Support Services, Inc. ("TSSI"). (Id. ¶¶ 49-59.) According to Plaintiffs, these Defendants permitted the individual Defendants to unlawfully require landlords participating in the Section 8 program to take the $200 landlord training course, (id. ¶¶ 50-51), failed to sanction the individual Defendants for their actions, (id. ¶¶ 52-53), allowed Defendant Greene and other individually named Defendants to profit from charging $200 for the landlord training course, (id. ¶¶ 54, 56), and permitted Defendants Greene, Rosenthal, Dorn, Coney, Leithead, Carter, and Staley to obstruct and interfere with federal investigations and audits in order to conceal illegal actions. (Id. ¶ 55.) Plaintiffs claim that these actions deprived them of their constitutional rights under the First, Fifth, and Fourteenth Amendments and violated 42 U.S.C. § 1983. (Id. ¶ 57.)

In Count Three, Plaintiffs allege that all Defendants violated the Moving to Work Demonstration Program ("MTW Program"), which requires Defendant PHA to report annually its expenditures – including those made by Defendants TSSI and PIAHP, PHA's non-profit

3

affiliates – and prohibits the use of federal funds for lobbying.  (Id. ¶¶ 61-62.)  Plaintiffs claim

that Defendant Greene and "those he conspired with solicited and required plaintiffs and plaintiff

class members to make payments . . . on the pretext that the funds would be used for a mandatory

one day training session when funds were used to lobby for federal funds and to promote political

activities in violation" of the MTW Program.  (Id. ¶ 64.)  As a result the MTW Program

violations, Plaintiffs allege that they and fellow class members suffered loss of earnings and

earning capacity, and experienced emotional distress.  (Id. ¶¶ 65-66.)

Count Four is a supplemental state law claim for conversion.  (Id. ¶¶ 68-69.)  Count Five

is another supplemental state law claim for breach of contract.  (Id. ¶¶ 70-78.)  Plaintiffs assert

that they entered into a Housing Assistance Payment agreement with Defendant PHA, whereby

PHA expressly agreed that Plaintiffs would receive subsidized tenant rents.  (Id. ¶ 71.)  They

allege that Defendant PHA – working in concert with the other Defendants – deceived them into

believing that the $200 mandatory training course was required to fulfill Plaintiffs' obligations

under the Housing Assistance Payment agreement.  (Id. ¶ 72-73.)  According to the Complaint,

Defendants breached their contract when they required Plaintiffs to attend a course that was not a

term or condition of the Housing Assistance Payment agreement.  (Id. ¶ 75.)  Finally, Plaintiffs

seek punitive damages in connection with these claims.  (Id. ¶¶ 79-81.)

On February 17, 2011, Defendants PHA, PIAHP, and Kirk Dorn collectively filed a

Motion to Dismiss, and the arguments contained therein were incorporated and adopted via

separate Motions to Dismiss filed on the same day by Defendants Coney and TSSI, Defendant

Carter, and Defendant Rosenthal.  Motions to Dismiss were also filed by Defendant Leithead on

February 17, 2011, Defendant Staley on February 17, 2011, Defendant IREM on February 22,

2011, and Defendant Greene on February 28, 2011.  Plaintiffs filed an Omnibus Response in

Opposition to Defendants' Motions to Dismiss on April 4, 2011, and Replies were filed by

Defendants PHA, PIAHP, and Dorn on April 12, 2011, Defendant Greene on April 13, 2011,

Defendant Staley on April 13, 2011, Defendant Rosenthal on April 15, 2011, Defendant Carter

on April 15, 2011, and Defendants Coney and TSSI on April 19, 2011.

## II.     STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of

demonstrating that the plaintiff has not stated a claim upon which relief can be granted.  FED. R.

CIV. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).  In Bell Atl.

Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court recognized that "a

plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do."  Id. at 555.  It emphasized that it would not require a "heightened fact pleading of specifics,

but only enough facts to state a claim to relief that is plausible on its face."  Id. at 570.

In the subsequent case of Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), the Supreme Court

enunciated two fundamental principles applicable to a court's review of a motion to dismiss for

failure to state a claim.  First, it noted that "the tenet that a court must accept as true all of the

allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of

the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.

at 1949.  Thus, although "[Federal] Rule [of Civil Procedure] 8 marks a notable and generous

departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the

doors of discovery for a plaintiff armed with nothing more than conclusions."  Id. at 1950.

Second, the Supreme Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Notwithstanding the foregoing, nothing in Twombly or Iqbal has altered some of the fundamental underpinnings of the Rule 12(b)(6) standard of review. Arner v. PGT Trucking, Inc., No. CIV.A.09-0565, 2010 WL 1052953, at *2 (W.D. Pa. Mar. 22, 2010); Spence v. Brownsville Area Sch. Dist., No. CIV.A.08-0626, 2008 WL 2779079, at *2 (W.D. Pa. July 15, 2008). Federal Rule of Civil Procedure 8 requires only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations. FED. R. CIV. P. 8; Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

## III. DISCUSSION[1]

Many of the factual and legal issues raised in each Defendant's Motion to Dismiss are

---

[1] With the exception of Plaintiffs' breach of contract claim, substantially similar causes of action were brought against Defendant PHA and other defendants involved in this litigation in Scott v. Philadelphia Hous. Auth., No. CIV.A.10-4723, 2011 WL 1791095 (E.D. Pa. May 11, 2011), a case decided by this Court earlier this year. Because of these similarities, many of the legal issues and applicable standards presented in Scott are addressed again here. The Court's analysis, however, applies only to the current Plaintiffs.

interrelated.  Therefore, rather than address each Motion individually, the Court discusses the

arguments made in those Motions in the context of the relevant claims contained in Plaintiffs'

Complaint.

> **A.      First Amendment Claim**

The United States Supreme Court has held that "[t]he right of freedom of thought and of

religion as guaranteed by the Constitution against State action includes both the right to speak

freely and the right to refrain from speaking at all . . . ."  W. Virginia State Bd. of Educ. v.

Barnette, 319 U.S. 624, 645 (1943) (Murphy, J., concurring).  As such, "[g]overnment action that

requires stating a particular message favored by the government violates the First Amendment

right to refrain from speaking."  Miller v. Mitchell, 598 F.3d 139, 151 (3d Cir. 2010) (citing C.N.

v. Ridgewood Bd. of Educ., 430 F.3d 159, 187 (3d Cir. 2005)).

The Supreme Court has also found that the First Amendment is implicated when

"individuals are compelled not to speak, but to subsidize a private message with which they

disagree."  Johanns v. Livestock Mktg. Ass'n, 544 U.S. 550, 557 (2005).  The Court clarified,

however, that while individuals "may challenge compelled support of private speech," they "have

no First Amendment right not to fund government speech.  And that is no less true when the

funding is achieved through targeted assessments devoted exclusively to the program to which

the assessed citizens object."  Id. at 562.

In this case, Plaintiffs claim their First Amendment rights were violated by virtue of the

fact that their $200 training course fee was used for lobbying and other political activities.

(Compl. ¶¶ 43, 47, 50, 54, 57.)  Defendants argue that while Plaintiffs paid their money to

Defendant PIAHP – the purported lobbying arm of Defendant PHA – the Complaint does not

allege that Defendant PIAHP actually did any lobbying. (Defs. PHA, PIAHP, and Dorn's Mem. Supp. Mot. Dismiss ("Def. PHA's Mem.") 23.) In the alternative, Defendants argue that any lobbying activity on the part of PHA or PIAHP would constitute government speech which, as the Supreme Court recognized in <u>Johanns</u>, is not actionable under the First Amendment. (<u>Id.</u> at 24-26.) Plaintiffs respond that Defendants have misinterpreted their claim, and that "the First Amendment violations occurred because Plaintiffs were forced to subsidize a *private* message with which they disagreed." (Pls.' Resp. Opp'n 23-24 (emphasis added).)

The Court finds that Plaintiffs' First Amendment claim fails for several reasons. First, to say that Plaintiffs were forced to subsidize a message with which they disagreed is not an accurate interpretation of Plaintiffs' own allegations. The Complaint alleges that Defendants lacked the authority to require a landlord training course, but deceived Plaintiffs into paying for such a course anyway, *and then* proceeded to use the money for lobbying or political purposes. These allegations do not establish that Plaintiffs were compelled to speak or subsidize speech; they demonstrate that Plaintiffs were required to pay for a training program. The manner in which Defendants spent the money after it was paid cannot reasonably be attributed to Plaintiffs for purposes of the First Amendment.

Furthermore, even if the Court were to find merit in Plaintiff's interpretation of what it means to subsidize speech, the First Amendment claim is flawed on an even more fundamental level. The Complaint states that the $200 training course fee was paid to Defendant PIAHP, a non-profit organization that was created to lobby for public housing *and* sponsor activities for nonunion employees of PHA. In other words, Plaintiffs have simply alleged that their money was given to an entity which, among other functions, engages in lobbying activity. They have

not actually identified the "speech" – government or private – which they were forced to subsidize.  Defendants' Motions to Dismiss Plaintiffs' First Amendment claim are therefore granted.

   B.      **Fifth Amendment Takings Clause Claim[2]**

The Takings Clause of the Fifth Amendment to the Constitution states, in relevant part: "nor shall private property be taken for public use, without just compensation."  U.S. CONST. amend. V.  The "classic" Takings Clause case involves "a transfer of property to the State or to another private party by eminent domain."  Stop the Beach Renourishment, Inc. v. Florida Dep't of Envtl. Prot., 130 S. Ct. 2592, 2601 (2010).  By contrast, a "regulatory taking" occurs when a "government regulation of private property [is] . . . so onerous that its effect is tantamount to a direct appropriation or ouster."  Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 537 (2005).  A regulation violates the Takings Clause in the following circumstances: (1) "where government requires an owner to suffer a permanent physical invasion of her property;" or (2) where the owner is completely deprived of the property's economically beneficial use.  Id. at 538 (internal citations omitted).

   "[W]hile a taking may occur when a specific fund of money is involved, the mere

---

   [2]  There was some initial confusion among the parties as to the exact nature of Plaintiffs' Fifth Amendment claim.  Defendants believed Plaintiffs were alleging a violation of the Fifth Amendment's Due Process Clause, and moved for summary judgment on that claim on the ground that Plaintiffs failed to allege any wrongdoing by the federal government. (Def. PHA's Mem. 26.)  Plaintiffs make clear in their Response in Opposition, however, that they are actually stating a claim under the Fifth Amendment's Takings Clause. (Pl.'s Resp. Opp'n 14-18.)  The Complaint states that Defendants PHA, PIAHP, IREM, and TSSI "allowed defendant Greene and the other individually named defendants to financially profit from the unlawful taking of plaintiffs' and plaintiff class' $200 payments in violation of the First, Fifth, and Fourteenth Amendments . . . ." (Compl. ¶ 54.)  The Court finds that Plaintiffs have articulated a Takings Clause claim by alleging an "unlawful taking" in violation of the Fifth Amendment.

imposition of an obligation to pay money . . . does not give rise to a claim under the Takings Clause of the Fifth Amendment." Commonwealth Edison Co. v. United States, 271 F.3d 1327, 1340 (Fed. Cir. 2001). Furthermore, "a Takings claim arises only when the property is legally taken, for example by Act of Congress or by eminent domain." Sanders v. United States, 132 Fed. Appx. 378, 380 (Fed. Cir. 2005).

In this case, Plaintiffs contend that "Defendants demanded the mandatory [training course] fee for a purely private, non-public use and it is therefore an unlawful, unconstitutional taking." (Pls.' Resp. Opp'n 16.) Defendants move to dismiss this claim on the ground that Plaintiffs' payments were voluntary, and therefore nothing was "taken" from them. (Def. PHA's Mem. 6.) The Court agrees. Plaintiffs paid $200 for a training course so that they could participate in the HCV/Section 8 Program, and that is exactly what they received. There is no allegation that Defendants failed to provide the course, or that any Plaintiff who took the course was denied access to the HCV/Section 8 Program. Even assuming Defendants had no authority to offer the training program and used the money for illegal lobbying activity, these actions do not constitute an unlawful taking. Plaintiffs may have been entitled to a refund of their money under some other theory of law, but they are not entitled to compensation under the Takings Clause of the Fifth Amendment. Defendants' Motions to dismiss this claim are therefore granted.

### C.     Fourteenth Amendment Due Process Claim

The Third Circuit has held that "[t]o prevail on a non-legislative substantive due process claim, 'a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies.'" Nicholas v. Pa. State

Univ., 227 F.3d 133, 139-40 (3d Cir. 2000) (quoting Woodwind Estates, Ltd. v. Gretkowski, 205

F.3d 118, 123 (3d Cir. 2000), *overruled on other grounds by* United Artists Theatre Circuit, Inc.

v. Twp. of Warrington, 316 F.3d 392, 399-400 (3d Cir. 2003)).  The issue of whether a certain

property interest is entitled to protection under the Substantive Due Process Clause "is not

determined by reference to state law, but rather depends on whether that interest is 'fundamental'

under the United States Constitution."  Nicholas, 277 F.2d at 140.

Here, Plaintiffs allege that their rights under the Due Process Clause of the Fourteenth

Amendment were violated when Defendants improperly charged them for the landlord training

course and then used the money for their own benefit and for lobbying activities.  (Compl. ¶¶ 42-

44, 47, 50, 54, 57.)  Defendants argue that this claim must fail because Plaintiffs have failed to

allege a violation of a fundamental right.  (Def. PHA's Mem. 20-23.)  More specifically, they

contend that because "there is no fundamental right to participation as a private landlord in the

HCV or Section 8 public housing program, it is self-evident that conditions established by PHA

in order to participate in the program cannot violate a due process right."  (Id. at 20.)  Plaintiffs

respond that they are not seeking to protect a "right to participate in a government program free

of restrictions," but rather "to enforce their right to participate in a government program without

having to pay off a government official or support his cause *du jour*."  (Pls.' Resp. Opp'n 21.)

Upon review of Plaintiffs' argument, it appears that they are alleging that a constitutional

violation occurred when Defendants implemented an unlawful prerequisite for participation in

the HCV Program.  While it is true that the Substantive Due Process Clause is implicated "when

government attempts to condition access to a government benefit on the relinquishment of a

constitutional right," Gary S. v. Manchester Sch. Dist., 241 F. Supp. 2d 111, 118 (D.N.H. 2003),

Plaintiffs have not made such a showing in this case. Even if Defendants were unauthorized to condition participation in the HCV Program on attendance at a training session and the payment of a fee, such requirements did not force Plaintiffs to relinquish a constitutional right. Defendants' Motions to dismiss Plaintiffs' substantive due process claim are granted.[3]

**D.** **Plaintiffs' Claim Under the Moving to Work Demonstration Program**

The Supreme Court has recognized that "§ 1983 actions may be brought against state actors to enforce rights created by federal statutes as well as by the Constitution." Gonzaga Univ. v. Doe, 536 U.S. 273, 279 (2002) (citing Maine v. Thiboutot, 448 U.S. 1 (1980)). In analyzing claims made pursuant to federal statutes, however, the Court has stated "that unless Congress 'speak[s] with a clear voice,' and manifests an 'unambiguous' intent to confer individual rights, federal funding provisions provide no basis for private enforcement by § 1983." Id. (quoting Pennhurst State Sch. & Hosp. v. Halderman, 451 U.S. 1, 17, 28, & n.21 (1981)). To determine whether a particular statutory provision confers a federal right, courts must consider three factors: (1) whether Congress intended for the provision in question to benefit the plaintiff; (2) whether the plaintiff has demonstrated that the right purportedly "protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence"; and (3) whether the statute unambiguously imposes "a binding obligation on the States." Blessing v. Freestone, 520 U.S. 329, 340-41 (1997) (citations omitted).

---

[3] Defendants further argue that the substantive due process claim should be dismissed because Plaintiffs have also alleged a First Amendment claim, which provides a more explicit textual source for the alleged constitutional violation. (Def. PHA's Mem. 23 (citing Gallo v. City of Philadelphia, 161 F.3d 217, 222 (3d Cir. 1998).) Because the Court finds that Plaintiffs have failed to state a substantive due process claim for the reasons set forth above, it declines to address this argument.

According to Plaintiffs, Defendant PHA is a participant in the MTW Program. (Compl. ¶ 1.) The MTW Program was created

> to give public housing agencies and the Secretary of Housing and Urban Development the flexibility to design and test various approaches for providing and administering housing assistance that: reduce cost and achieve greater cost effectiveness in Federal expenditures; give incentives to families with children where the head of household is working, seeking work, or is preparing for work by participating in job training, educational programs, or programs that assist people to obtain employment and become economically self-sufficient; and increase housing choices for low-income families.

Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. 104-134, § 204, 110 Stat. 1321, 1321-281 (1996). The MTW Program empowers the Secretary of Housing and Urban Development to "provide training and technical assistance . . . and conduct detailed evaluations of up to 15 [housing] agencies in an effort to identify replicable program models promoting the purpose of the demonstration." Id. at 1321-282. It also authorizes housing agencies to combine the assistance they receive pursuant to sections 8, 9, and 14 of the United States Housing Act of 1937 in order "to provide housing assistance for low-income families, . . . and services to facilitate the transition to work on such terms and conditions as the agency may propose and the Secretary may approve." Id.

The Court notes at the outset of this discussion that Plaintiffs' claim under the MTW Program is ambiguous. The Complaint states that Defendants PHA and PIAHP required Plaintiffs to pay for the landlord training session, that those fees were used to lobby for federal funding and promote political activity in violation of the MTW Program, that Defendants never reported their lobbying activity, and that the MTW Program and supporting HUD regulations conferred rights upon Plaintiffs which were allegedly violated by Defendants' conduct. (Compl. ¶¶ 61-67.) The Complaint, however, does not specify the "rights" Plaintiffs have under the

MTW Program. This uncertainty is exacerbated by the fact that, in their Response in Opposition, Plaintiffs contend that they are *not* "seeking redress for Defendants' failure to report the fees and for Defendants' inappropriate use of those fees." (Pls.' Resp. Opp'n 26.) Rather, Plaintiffs state that their MTW Program claim is an attempt to enforce the provisions of the HCV/Section 8 Program, specifically 24 C.F.R. § 982.306. (Id.) This regulation, which addresses circumstances in which PHA may disapprove an owner who wishes to provide an assisted tenancy, is not referenced in the Complaint. In addition, § 982.306 says nothing about prohibitions on lobbying activity or financial disclosure requirements, which are the bases cited in the Complaint as to how Defendants violated the MTW Program. Nevertheless, according to Plaintiffs, Defendants' participation in the MTW Program is relevant because it makes regulations such as 24 C.F.R. § 982.306 applicable.

Defendants argue that Plaintiffs' claim must fail because Congress never conferred upon them a private cause of action under § 1983 for violations of the MTW Program. (Def. PHA's Mem. 12.) The Court agrees. Under the first prong of the test set forth in Blessing, a plaintiff attempting to enforce a right created by a federal statute must establish that the statutory provision in question was enacted for the plaintiff's benefit. Blessing, 520 U.S. at 340. As noted above, the MTW Program was created to give public housing agencies the flexibility to test various approaches for reducing costs and delivering services to individuals and families who receive housing assistance. § 204, 110 Stat. at 1321-281. There is nothing in the MTW Program that confers any rights upon landlords who participate in the HCV/Section 8 Program.

Nor do Plaintiffs have a cause of action under 24 C.F.R. § 982.306. Plaintiffs claim that § 982.306 delineates the reasons why Defendant PHA may deny approval to owners who seek to

offer assisted tenancies, and that failing to pay for and attend a property management course is

not among those reasons.  (Pls.' Resp. Opp'n 26.)  None of the Plaintiffs, however, have alleged

that they were denied access to the HCV/Section 8 Program.  More importantly, § 982.306

specifically states that "[n]othing in this rule is intended to give any owner any right to

participate in the program."  24 C.F.R. § 982.306(e).  Therefore, even if Defendants acted

improperly by requiring Plaintiffs to take the $200 course, there is no remedy for this violation

under 24 C.F.R. § 982.306.

In sum, Plaintiffs have failed to show that they have a federally-conferred right to sue for

Defendants' alleged violations of the MTW Program,[4] and Defendants' Motions to Dismiss this

claim are therefore granted.[5]

### E.    Conversion

In Pennsylvania, "conversion is the 'deprivation of another's right of property, or use or

possession of a chattel, or other interference therewith, without the owner's consent and without

legal justification.'"  Universal Premium Acceptance Corp. v. York Bank & Trust Co., 69 F.3d

695, 704 (3d Cir. 1995) (quoting Cenna v. United States, 402 F.2d 168, 170 (3d Cir. 1968)).

"Money may be the subject of a conversion," but "only where the plaintiff had a property interest

in the money at the time of the alleged conversion."  Kia v. Imaging Sciences Int'l, Inc., 735 F.

---

[4]  Plaintiffs also refer to "the United States Housing Act (USHA), the governing federal regulations and the MTW agreement" as other sources of a private right of action.  (Pls.' Resp. Opp'n 24.)  They have not, however, identified any provisions of these laws and regulations to support this argument.

[5]  Defendants argue that, because there is no private cause of action, the Court should strike from the Complaint all allegations pertaining the MTW Program.  (Def. PHA's Mem. 17-18.)  Because the Court is dismissing the Complaint in its entirety, it declines to address this argument.

Supp. 2d 256, 270 (E.D. Pa. 2010) (citations omitted).

Here, Plaintiffs claim that Defendants converted their $200 by improperly requiring the training course. (Compl. ¶¶ 68-69; Pls.' Resp. Opp'n 38-39.) Defendants argue that Plaintiffs have failed to state a claim for conversion because their payment of the fees was voluntary. (Def. PHA's Mem. 29.) Plaintiffs respond that because they had a property interest in their money at the time it was paid – and because Defendants had no legal justification for demanding the money – they have satisfied the elements of a conversion claim. (Pls.' Resp. Opp'n 38-39.)

The Court agrees with Defendants that the voluntary nature of Plaintiffs' payments defeats a claim for conversion. Even if Defendants lacked authority to require the $200 payment, an allegation that Defendants had no right to charge the fee is different from an allegation that Plaintiffs' money was taken without their consent. An analogous situation was addressed by this District in <u>Lawn v. Enhanced Serv. Billing, Inc.</u>, No. CIV.A.10-1196, 2010 WL 2773377, at *3 (E.D. Pa. July 13, 2010). There, the court found that although the plaintiff alleged "fraudulent and misleading behavior on the part of Defendants," those allegations did "not negate the fact that Plaintiff consented to the transfer of the chattel. Even though Plaintiff may have lacked complete knowledge of to whom the money was ultimately going, the fact that the money was parted with willingly prevents Defendant's actions from being classified as conversion." <u>Id.</u> Defendants' Motions to dismiss Plaintiffs' conversion claim are granted.[6]

---

[6] Defendants further argue that because Plaintiffs have also brought a breach of contract claim to recover the $200 fee, the conversion claim is barred by the "gist of the action" doctrine. (Def. PHA's Mem. 29-30.) Because the Court finds Plaintiffs have failed to satisfy the elements of a conversion claim, it declines to consider this argument.

**F.      Breach of Contract**

In Pennsylvania, "the elements of a breach of contract claim include: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damages." Howe v. LC Philly, LLC, No. CIV.A.10-5495, 2011 WL 1465446, at *2 (E.D. Pa. Apr. 15, 2011) (citing Gorski v. Smith, 812 A.2d 683, 692 (Pa. Super. Ct. 2002)).

Here, Plaintiffs allege that they entered into a Housing Assistance Payment agreement with Defendants, which entitled them to compensation in the form of subsidized tenant rents. (Compl. ¶ 71.)  They claim that Defendants breached this agreement by requiring them "to pay $200 for a mandatory one day program that was not a term and condition of the Housing Assistance Payment agreement." (Id. ¶ 75.)  Defendants argue that the Housing Assistance Payment agreement would not have been executed until after Plaintiffs had taken the landlord training course and been approved for the HCV/Section 8 Program, and so the fact that the contracts did not exist at the time Plaintiffs took the course precludes any cause of action for breach.  (Def. PHA's Mem. 31.)  Defendants further argue that the breach of contract claim should be dismissed because the service Plaintiffs paid for – the training course – was provided to them.  (Id. at 31-32.)  Plaintiffs contend that they have been participating in the HCV/Section 8 Program since 2002, and that the training course requirement was not implemented until 2008. (Pls.' Resp. Opp'n 40-41.)[7]  Thus, according to Plaintiffs, the Housing Assistance Payment agreement did in fact exist at the time they took the course.  Finally, Defendants reply that if Plaintiffs had no contractual duty to attend the course, they simply could have refused to do so,

_____

[7] The Court notes that this argument conflicts with Complaint, which states that the training course requirement was implemented in 2002, not 2008.  (See Compl. ¶ 1.)

and would have had an affirmative defense if Defendants sued *them* for breach of contract. (Def.

PHA, PIAHP, and Dorn's Reply 9.)

Regardless of when the Housing Assistance Payment agreement was executed, Plaintiffs'

breach of contract claim fails because they have not identified the term of the contract that was

actually breached. Rather, Plaintiffs have alleged that Defendants deceived them into performing

an act that was beyond the scope of the original agreement. Even if true, these allegations merely

describe an attempt by Defendants to impose a new term or to modify the existing contract. If

Plaintiffs refused to comply with this demand and Defendants denied them the benefit of their

bargain – i.e. the subsidized rent money – then they may have had a claim for breach of contract.

As it is, the Court is presented with a scenario in which Plaintiffs willingly paid the $200 course

fee and continued to participate in the HCV/Section 8 Program, but now seek to recover the fee

on the grounds that Defendants never had the authority to make such a requirement. While

Defendants' purportedly deceptive conduct may have constituted some kind of fraud or

misrepresentation, Plaintiffs have made no such claim, and it is not the Court's role to instruct

Plaintiffs on which causes of actions would properly redress their alleged harms. Defendants'

Motions to dismiss Plaintiffs' breach of contract claim are granted.[8]

### G. Punitive Damages

The Complaint requests punitive damages in conjunction with Plaintiffs' allegations.

---

[8] Defendants Leithead, Staley, IREM, and Greene move to dismiss the breach of contract claim on the ground that they were not a party to any contract with Plaintiffs. (Def. Leithead's Mem. Supp. Mot. Dismiss 13-14; Def. Staley's Mem. Supp. Mot. Dismiss 9-10; Def. IREM's Mem. Supp. Mot. Dismiss 16; Def. Greene's Mem. Supp. Mot. Dismiss 23.) Because the Court finds that Plaintiffs have failed to state a claim for breach of contract for the reasons set forth above, it declines to consider these arguments.

(Compl. ¶¶ 79-81.) Defendant IREM has moved to dismiss this request. (Def. IREM's Mem. Supp. Mot. Dismiss 16-17.) Because Plaintiffs have failed to state a claim upon which relief may be granted, there cannot be an award of any damages, punitive or otherwise. The Motion to Dismiss Plaintiffs' request for punitive damages is granted.

### H. Defendants' Remaining Arguments

In support of their Motions to Dismiss, Defendants raise various defenses pertaining to sovereign and qualified immunity. (See Def. PHA's Mem. 27-28, 32-38; Def. Staley's Mem. Supp. Mot. Dismiss 7, 10; Def. Leithead's Mem. Supp. Mot. Dismiss 12-13; Def. Greene's Mem. Supp. Mot. Dismiss 17-21, 23-24.) In addition, Defendant Staley seeks dismissal of the claims against her in her individual capacity. (Def. Staley's Mem. Supp. Mot. Dismiss 7-8.) Defendant Leithead argues that the claim against him in his official capacity should be dismissed as redundant, and that Plaintiffs' § 1983 and conversion claims against him are barred by the statute of limitations. (Def. Leithead's Mem. Supp. Mot. Dismiss 8-11). Defendant IREM argues that all constitutional claims should be dismissed against it because it is not a governmental entity, and that Plaintiffs have failed to allege sufficient facts to sustain a conspiracy claim. (Def. IREM's Mem. Supp. Mot. Dismiss 11-14.) Finally, Defendant Greene has moved to dismiss Plaintiffs' request for an injunction. (Def. Greene's Mem. Supp. Mot. Dismiss 6-7.) Because the Court finds that Plaintiff has failed to state a claim against any Defendant, it declines to address these remaining arguments.

### IV. CONCLUSION

For all of the foregoing reasons, the Court finds that Plaintiffs have failed to state a claim upon which relief can be granted. With respect to their constitutional claims, Plaintiffs have

failed to allege that they were compelled to speak in a manner that violated their First Amendment rights, that their property was appropriated for public use in violation of the Takings Clause of the Fifth Amendment, or that a fundamental right was infringed in violation of the Due Process Clause of the Fourteenth Amendment. Furthermore, Plaintiffs have not established that they have a private right of action under the Moving to Work Demonstration Program. Next, their conversion claim fails because the $200 training course fee was paid voluntarily. Finally, Plaintiffs cannot sustain a breach of contract claim because they have not identified any contractual term that was breached. In the absence of any cognizable claim for relief, Plaintiffs are not entitled to punitive damages. The Motions to Dismiss filed by Defendants PHA, PIAHP, TSSI, IREM, Greene, Rosenthal, Dorn, Coney, Leithead, Carter, and Staley are granted.

An appropriate Order follows.